IN THE SUPREME COURT OF NORTH CAROLINA

No. 145PA17

Filed 11 May 2018

IN THE MATTER OF:  A.P.

On discretionary review pursuant to N.C.G.S. § 7A-31 of a unanimous decision
of the Court of Appeals, ___ N.C. App. ___, 800 S.E.2d 77 (2017), vacating an order
entered on 29 June 2016 by Judge Ty Hands in District Court, Mecklenburg County.
Heard in the Supreme Court on 12 March 2018.

> *Matthew D. Wunsche, GAL Appellate Counsel, for appellant Guardian ad
> Litem, and Keith Roberson for petitioner-appellant Mecklenburg County
> Department of Social Services, Youth and Family Services Division.*
>
> *Anné C. Wright for respondent-appellee mother.*

BEASLEY, Justice.

In this case we consider whether the Juvenile Code mandates that a petition
alleging a juvenile is abused, neglected, or dependent must be filed *only* by the
director or authorized agent of the department of social services of the county "in
which the juvenile resides or is found."  Because we conclude that the legislature did
not intend to constrain departments of social services in this way and because such a
constraint would not be in the best interests of children or families in North Carolina,
we reverse the decision of the Court of Appeals holding that the Mecklenburg County

Department of Social Services, Youth and Family Division did not have standing to file the juvenile petition in this case.

A.P. was born on 2 August 2015. When A.P. was born, she lived with respondent mother (respondent) in a group home for teen mothers located in Cabarrus County. On 22 September 2015, when A.P. was less than two months old, respondent was taken to an emergency room and subsequently involuntarily committed to a mental health facility in Mecklenburg County. A social worker from Cabarrus County Department of Human Services (CCDHS) met with respondent at the hospital, and respondent agreed to a safety plan with CCDHS that provided, *inter alia,* that A.P. would live in Rowan County with Ms. B., respondent's case worker from the group home, while respondent was in the residential mental health facility.

Respondent indicated that she planned to move with A.P. to live with her grandfather in Mecklenburg County after her release from the treatment facility, and CCDHS requested that the Mecklenburg County Department of Social Services, Youth and Family Division (YFS), investigate the appropriateness of the grandfather's home for A.P.'s placement. YFS found the home appropriate. Respondent was discharged from the treatment facility on 23 October 2015, and she and A.P. moved in with respondent's grandfather. CCDHS transferred the case to YFS to provide services to respondent in Mecklenburg County. Respondent agreed

to cooperate with services from YFS and reside with A.P. in her grandfather's home. According to a CCDHS employee, CCDHS "was no longer involved [with the case] after November 2, 2015."

On 25 November 2015, YFS received a report alleging that respondent was living with A.P. in an abandoned house in Mecklenburg County without heat or electricity. The report also alleged that respondent did not have food, clothing, or diapers for A.P. and that respondent was using cocaine and marijuana. Respondent's sister took A.P. back to Ms. B.'s home in Rowan County. Ms. B. observed that A.P. had not been bathed recently and that her clothes were "very dirty." Ms. B. also found drug paraphernalia in A.P.'s diaper bag. Around 4 December 2015, respondent submitted to a substance abuse assessment at the request of YFS and tested positive for benzodiazepines and marijuana. Respondent admitted to Ms. B. that she had been living in the abandoned house and that she had used marijuana.

On 18 December 2015, respondent mother agreed that A.P. would remain with Ms. B. temporarily while respondent lived with a family friend in South Carolina. Respondent returned to Mecklenburg County in January 2016 and was later jailed in Mecklenburg County on unidentified criminal charges in February 2016. Respondent also notified YFS that she received inpatient treatment at a mental health facility in Mecklenburg County from 18 to 20 February 2016. She later indicated to a YFS social

worker that she had been residing with her sister in Cabarrus County as of 22 March 2016.

On 23 March 2016, Ms. B. informed YFS that she was no longer able to provide care for A.P. YFS contacted CCDHS and requested to transfer the case back to Cabarrus County. CCDHS declined the transfer. On 29 March 2016, YFS obtained a non-secure custody order for A.P. from a Mecklenburg County magistrate and retrieved A.P. from Ms. B.'s home. The following day, YFS filed a juvenile petition with the District Court in Mecklenburg County alleging that A.P. was a neglected and dependent juvenile.

The trial court conducted a hearing on 17 May 2016 and entered an adjudication and disposition order on 29 June 2016 in which it concluded that A.P. is a neglected and dependent juvenile. At the hearing, respondent moved to dismiss the case, arguing, *inter alia*, that YFS lacked standing to file the juvenile petition under the relevant provisions of the Juvenile Code, and therefore, the trial court lacked subject matter jurisdiction to hear the case. The trial court denied respondent's motion at the hearing. Respondent appealed from the trial court's adjudication and disposition order.

The Court of Appeals held that YFS lacked standing because it was not the proper party to file the juvenile petition under N.C.G.S. § 7B-401.1(a), and it vacated

the trial court's order on that basis.[1] *In re A.P.*, ___ N.C. App. ___, ___, ___, 800 S.E.2d 77, 80, 82 (2017). We now reverse the decision of the Court of Appeals.

Generally, "[j]urisdiction is '[t]he legal power and authority of a court to make a decision that binds the parties to any matter properly brought before it.' " *In re T.R.P.*, 360 N.C. 588, 590, 636 S.E.2d 787, 789-90 (2006) (second alteration in original) (quoting *Judicial Jurisdiction*, *Black's Law Dictionary* 856 (7th ed. 1999)). Subject matter jurisdiction, more specifically, is "the power to pass on the merits of [a] case." *Boyles v. Boyles*, 308 N.C. 488, 491, 302 S.E.2d 790, 793 (1983); *see also* 6A Strong's North Carolina Index 4th: *Courts* § 8, at 423-27 (2013) (discussing subject matter jurisdiction generally). "Subject matter jurisdiction is the indispensable foundation upon which valid judicial decisions rest, and in its absence a court has no power to act . . . ." *In re T.R.P.*, 360 N.C. at 590, 636 S.E.2d at 790.

Chapter 7B of the North Carolina General Statutes (the Juvenile Code) governs subject matter jurisdiction over abuse, neglect, and dependency actions. *E.g., id.* at 591, 636 S.E.2d at 790; *see also* N.C.G.S. § 7B-200(a) (2017). Section 7B-200

---

[1] In addition to her subject matter jurisdiction argument on appeal, respondent challenged the sufficiency of evidence supporting the trial court's conclusions that A.P. was a neglected and dependent juvenile and further argued that the Court of Appeals should have remanded the case to the trial court for additional factual inquiry regarding the applicability of the Indian Child Welfare Act. The Court of Appeals did not address these arguments because its holding that the trial court lacked subject matter jurisdiction was dispositive. *In re A.P.*, ___ N.C. App. at ___, 800 S.E.2d at 82.

provides that the district court division of the General Court of Justice[2] "has exclusive, original jurisdiction over any case involving a juvenile who is alleged to be abused, neglected, or dependent." N.C.G.S. § 7B-200(a). Once properly obtained, "jurisdiction shall continue until terminated by order of the court or until the juvenile reaches the age of 18 years or is otherwise emancipated, whichever occurs first." *Id.* § 7B-201(a) (2017). "A trial court's subject matter jurisdiction over all stages of a juvenile case is established when the action is initiated with the filing of a properly verified petition." *In re T.R.P.*, 360 N.C. at 593, 636 S.E.2d at 792 (holding that a verified petition is a prerequisite to the trial court's exercise of subject matter jurisdiction); *see also* N.C.G.S. § 7B-405 (2017) ("An action is commenced by the filing of a petition in the clerk's office when that office is open or by the acceptance of a juvenile petition by a magistrate when the clerk's office is closed, which shall constitute filing.").

Respondent argues—and the Court of Appeals held—that the only party that may file a petition alleging a juvenile is abused, neglected, or dependent is the "director of the county department of social services in the county in which the juvenile resides or is found, or the director's [authorized] representative." N.C.G.S. § 7B-101(10) (2017) (defining "[d]irector" for purposes of the Juvenile Code); *see id.* §

---

[2] While section 7B-200(a) states that it is "[t]he court" that has jurisdiction, the Juvenile Code defines "[c]ourt" as "[t]he district court division of the General Court of Justice." N.C.G.S. § 7B-101(6) (2017).

7B-401.1(a) (2017) (providing that "[o]nly a county director of social services or the director's authorized representative may file a petition alleging that a juvenile is abused, neglected, or dependent"); *see also id.* § 7B-400(a) (2017) (providing that "[a] proceeding in which a juvenile is alleged to be abused, neglected, or dependent may be commenced in the district in which the juvenile resides or is present"). But this rigid interpretation of isolated provisions in the Juvenile Code is unsupported by the whole of the statutory text and creates jurisdictional requirements beyond those which the legislature intended to impose.[3] "Perhaps no interpretive fault is more common than the failure to follow the whole-text canon, which calls on the judicial interpreter to consider the entire text, in view of its structure and of the physical and logical relation of its many parts." *N.C. Dep't of Transp. v. Mission Battleground Park, DST*, ___ N.C. ___, ___, 810 S.E.2d 217, 222 (2018) (quoting Antonin Scalia & Bryan A. Garner, *Reading Law: The Interpretation of Legal Texts* 167 (2012)).

When read holistically with other provisions in the Juvenile Code, the statutory sections governing "[p]arties," N.C.G.S. § 7B-401.1(a), and "[v]enue," *id.* § 7B-400(a), do not mandate dismissal of the juvenile petition in this case. Although

---

[3] We note that at least one other unanimous panel of the Court of Appeals has, prior to this appeal, rejected arguments essentially identical to those made by respondent in this case. *See In re J.R.B.*, 182 N.C. App. 528, 642 S.E.2d 549, 2007 WL 968735, at *1-2 (2007) (unpublished) ("Respondent argues that petitioner, Stokes County Department of Social Services, did not have standing to file the action in Stokes County District Court because neither she nor the child were residing or present in Stokes County at the time of the filing of the petition. Respondent's argument, however, confuses jurisdiction with venue.").

subsection 7B-401.1(a) states that "[o]nly *a* county director of social services or the director's authorized representative may file a petition alleging that a juvenile is abused, neglected, or dependent," the statute does not identify *which* county director of social services must file the petition. *Id.* § 7B-401.1(a) (emphasis added). Nor does the statute limit the class of proper petitioners to only a subset of county directors of social services. *See id.* Respondent's interpretation imports the definition of "[d]irector" from N.C.G.S. § 7B-101(10) to substitute for "a county director of social services" in subsection 7B-401.1(a). But the General Assembly's use of the indefinite article, "a" before "county director of social services" in subsection 7B-401.1(a) belies the notion that the provision limits standing to any *one* county director of social services. The introductory clause for the definitions section of the Juvenile Code states that the defined words "have the listed meanings" for the purposes of the Code "*unless the context clearly requires otherwise.*" N.C.G.S. § 7B-101 (emphasis added). Here, context requires otherwise.

Throughout the Juvenile Code, the legislature intentionally differentiates between references to *a* director of a department of social services and *a particular* director of a department of social services. *Compare* N.C.G.S. § 7B-300 (2017) (requiring "[t]*he director of the department of social services in each county of the State*" to establish protective services for juveniles alleged to be abused, neglected, or dependent (emphasis added)), *id.* § 7B-301 (2017) (imposing a duty to report suspicions of abuse, neglect, or dependency to "*the director of the department of social*

*services in the county where the juvenile resides or is found*" (emphasis added)), *id.* §

7B-302 (2017) (requiring "*the director of the department of social services*" who

receives a report alleging abuse, neglect, or dependency to investigate the report

(emphasis added)), *id.* § 7B-307 (2017) (requiring "*the director*" to report findings of

abuse, neglect, or dependency to "the district attorney" and "the appropriate local law

enforcement agency" (emphasis added)), *id.* § 7B-308 (2017) (requiring a physician or

facility administrator who retains custody of a juvenile pursuant to that section to

notify "*the director of social services for the county in which the facility is located*"

(emphasis added)), *id.* § 7B-320 (2017) (requiring "*the director*" to provide notice to an

person identified as a "responsible individual" under N.C.G.S. § 7B-101(18a) after the

director has completed an investigation and determined the existence of abuse or

serious neglect (emphasis added)), *id.* § 7B-403 (2017) (requiring that all reports

alleging a juvenile is abused, neglected, or dependent be screened by "*the director of*

*the department of social services*" (emphasis added)), *and id.* § 7B-505.1(a) (2017)

(permitting "*the director*" to "arrange for, provide, or consent to" certain medical

procedures for a juvenile in the director's custody (emphasis added)), *with id.* § 7B-

311(a) (2017) (requiring "county directors of social services" to furnish certain data to

the Department of Health and Human Services), *id.* § 7B-324(a) (2017) (prohibiting

certain persons who have been identified as a "responsible individual" under N.C.G.S.

§ 7B-101(18a) "by *a director*" from petitioning for judicial review of such

determinations (emphasis added)), *and id.* § 7B-401.1(a) (authorizing only "*a county*

*director of social services or the director's authorized representative*" to file a juvenile petition (emphasis added)). We presume that the legislature is capable of utilizing articles and other contextual clues to distinguish between directors of county departments of social services *generally* and specific directors of specific county departments. *See State v. Buckner*, 351 N.C. 401, 408, 527 S.E.2d 307, 311 (2000) ("If possible, a statute must be interpreted so as to give meaning to all its provisions." (citing *State v. Bates,* 348 N.C. 29, 35, 497 S.E.2d 276, 279 (1998))); *see also Hall v. Simmons*, 329 N.C. 779, 784, 407 S.E.2d 816, 818 (1991) ("[S]ignificance and effect should, if possible, . . . be accorded every part of the act, including every section, paragraph, sentence or clause, phrase, and word." (alterations in original) (quoting *State v. Williams,* 286 N.C. 422, 432, 212 S.E.2d 113, 120 (1975))).

Other provisions of the Juvenile Code suggest that there may be instances when the party filing the juvenile petition is the director of a department of social services for a county that is not the juvenile's county of residence. *See* N.C.G.S. § 7B-400(b) (2017) ("When the director in one county conducts an assessment pursuant to G.S. 7B-302 in another county because a conflict of interest exists, the director in the county conducting the assessment may file a resulting petition in either county."); *see also id.* § 7B-302(a2) ("If the director, at any time after receiving a report that a juvenile may be abused, neglected, or dependent, determines that the juvenile's legal residence is in another county, the director shall promptly notify the director in the county of the juvenile's residence, and the two directors shall coordinate efforts to

ensure that appropriate actions are taken."); *id.* § 7B-402(d) (2017) ("If the petition is filed in a county other than the county of the juvenile's residence, the petitioner shall provide a copy of the petition and any notices of hearing to the director of the department of social services in the county of the juvenile's residence.").

Because the language of section 7B-401.1(a) identifies "a county director of social services" as the proper petitioner in a juvenile adjudication action rather than "the director" (importing the definition from N.C.G.S. § 7B-101(10)) or similar language singling out particular directors, we hold that the legislature did not intend to limit the class of parties who may invoke the court's subject matter jurisdiction in juvenile adjudication actions to only directors of county departments of social services in the county where the juvenile at issue resides or is found. Respondent suggests, under her interpretation of the Juvenile Code, that YFS would have had standing in this case if it had simply asked Ms. B. to bring A.P. to Mecklenburg County before YFS filed the juvenile petition. Respondent's interpretation—tying subject matter jurisdiction to the physical location of the juvenile at the time of filing unless the petition is filed by the director of the county department of social services for the juvenile's county of residence—would permit a parent or caretaker of a juvenile to prevent a court's otherwise proper exercise of subject matter jurisdiction simply by moving the juvenile from one county to another. Worse still, because subject matter jurisdiction "can be challenged 'at any stage of the proceedings, even after judgment,' " *Willowmere Cmty. Ass'n v. City of Charlotte*, ___ N.C. ___, ___, 809 S.E.2d

558, 564 (2018) (quoting *In re T.R.P.*, 360 N.C. at 595, 636 S.E.2d at 793), respondent's interpretation would "subject countless judgments [in juvenile cases] across North Carolina to attack for want of subject matter jurisdiction," *id.* at ___, 809 S.E.2d at 563, and needlessly delay permanency for juveniles alleged to be abused, neglected, or dependent. Our rejection of respondent's interpretation of the Juvenile Code is guided and supported by our oft-recited recognition that "the fundamental principle underlying North Carolina's approach to controversies involving child neglect and custody [is] that the best interest of the child is the polar star."[4] *In re M.A.W.*, 370 N.C. 149, 152, 804 S.E.2d 513, 516 (2017) (alteration in original) (quoting *In re Montgomery*, 311 N.C. 101, 109, 316 S.E.2d 246, 251 (1984));

---

[4] Other policy objectives that might be advanced by respondent's interpretation, such as requiring that the deciding court have sufficient connection with the parties, providing parties a convenient forum for litigation, preventing the entry of conflicting orders from duplicative proceedings, or requiring the department filing the petition to be familiar with the facts and allegations prompting intervention, are appropriately and adequately addressed by the General Assembly in other provisions in the Juvenile Code. *See* N.C.G.S. §7B-200(b) (2017) (explaining the means by which the court in a juvenile proceeding may permissibly exercise "[personal] jurisdiction over the parent, guardian, custodian, or caretaker of a juvenile who has been adjudicated abused, neglected, or dependent"); *id.* § 7B-400(c) (2017) (authorizing the court in which the proceeding is filed to change venue for good cause *without* affecting the identity of the petitioner); *id.* § 7B-200(c)(1) (2017) (staying any other civil action in North Carolina in which the juvenile's custody is at issue pending action by the court in the Chapter 7B juvenile proceeding); *id.* § 7B-200(c)(2) (2017) (providing that any properly entered order in the juvenile proceeding controls over a conflicting order entered in another civil custody action); *id.* § 7B-200(d) (2017) (permitting other civil actions to be consolidated with the juvenile proceeding and permitting the court to stay the juvenile proceeding pending the resolution of another civil action); *id.* § 7B-302(a) (requiring *the director* of the department of social services who receives a report of abuse, neglect, or dependency—rather than *all directors*—to investigate the report and determine whether services should be provided)..

*see also* N.C.G.S. § 7B-100(5) (2017) (directing courts to construe the Juvenile Code in a way that, *inter alia,* "ensur[es] that the best interests of the juvenile are of paramount consideration . . . and that when it is not in the juvenile's best interest to be returned home, the juvenile will be placed in a safe, permanent home within a reasonable amount of time").

The record demonstrates that the juvenile petition in this case was properly verified and filed by an authorized representative of "a county director of social services." N.C.G.S. § 7B-401.1(a). Accordingly, the decision of the Court of Appeals holding otherwise is reversed, and this case is remanded to that court to address respondent's remaining arguments in this appeal.

REVERSED AND REMANDED.