An unpublished opinion of the North Carolina Court of Appeals does not constitute controlling legal authority. Citation is disfavored, but may be permitted in accordance with the provisions of Rule 30(e)(3) of the North Carolina Rules of Appellate Procedure.

IN THE COURT OF APPEALS OF NORTH CAROLINA

No. COA25-255

Filed 5 November 2025

Mecklenburg County, No. 24JA000078-590

In the matter of: K.W.

Appeal by respondent-custodian from adjudication and disposition orders entered 6 December 2024 and 12 December 2024 by Judge Elizabeth T. Trosch in Mecklenburg County District Court. Heard in the Court of Appeals 23 September 2025.

> *Kristina A. Graham for petitioner-appellee Mecklenburg County Youth and Family Services.*
>
> *Administrative Office of the Courts, by Guardian Ad Litem Staff Attorney Brittany T. McKinney, for appellee guardian ad litem.*
>
> *Robinson & Lawing, LLP, by Christopher M. Watford, for respondent-appellant custodian.*

FREEMAN, Judge.

Respondent-custodian appeals from adjudicatory and dispositional orders as to K.W. ("Kelsey").[1]  On appeal, respondent-custodian argues that the trial court erred in (1) failing to make proper findings under N.C.G.S. § 7B-901(c)(1)(f) and abused its discretion by ceasing reunification efforts, and (2) removing respondent-custodian as a party from the juvenile action.  After careful review, we vacate and remand for further proceedings.

## I.  Factual and Procedural Background

Around July 2013, when Kelsey was two months old, Kelsey's biological mother left her in the care of Luchrisha Johnson, respondent-custodian.  On 17 July 2020, the trial court entered a consent order providing respondent-custodian with legal and physical custody of Kelsey.

On 5 March 2024, Mecklenburg County Youth and Family Service ("YFS") received a report containing allegations that 10-year-old Kelsey walked around her neighborhood knocking on doors and seeking help.  The family who let Kelsey into their home observed she was not wearing shoes and had "marks and scars on multiple areas of her body."  Kelsey told the family that respondent-custodian had kicked her out of their home after she failed to clean up dog pee and had attempted to hit her.  Kelsey explained she ran away without shoes on because respondent-custodian would not allow her to take shoes respondent-custodian had purchased for her.  That same

---

[1] A pseudonym is used to protect the juvenile's identity pursuant to N.C. R. App. P. 42(b).

family called the Charlotte Mecklenburg Police Department and filed a police report. Responding police officers reported and photographed "welts and other markings" on Kelsey's back, legs, arms and some markings on her face upper neck, and below her jawline.

At the same time, respondent-custodian realized Kelsey was missing and alerted law enforcement of her disappearance. Respondent-custodian later testified that she overheard Kelsey say she wanted to run away but did not believe her. However, when Kelsey left the home and did not come back inside, respondent-custodian called local authorities.

Kelsey described to police that respondent-custodian regularly beat her, and after she would be forced to stand "military-style" in the corner of a room unless she needed to use the restroom. Respondent-custodian admitted to police she previously whipped Kelsey due to her "acting out." Subsequently, respondent-custodian was charged with misdemeanor child abuse, and agreed to place Kelsey with her great aunt, who was later approved by YFS as a temporary safety provider.

That same day, Kelsey was transported to Levine Children's Hospital for evaluation of her injuries. There, Kelsey was diagnosed with acute child abuse. Social workers met Kelsey at the University City Police Station later that night to photograph Kelsey's injuries and interview her as part of the child protective services case. Kelsey described multiple incidents of being beaten by respondent-custodian with various household items—like a wooden brush, metal spoon, or extension cord.

Kelsey said these beatings would occur after failing to adequately complete cleaning tasks, like taking care of the family's thirteen adult dogs and puppies, making the child's bed, or cleaning the garage. Kelsey explained she ran away on 5 March 2024, to avoid being beaten by respondent-custodian, who became angry with Kelsey for failing to make her bed and vacuum her room. Based upon this incident and its investigation, YFS filed a petition on 14 March 2024, alleging Kelsey was an abused and neglected juvenile, and the trial court signed a nonsecure custody order that day.

YFS's petition also alleged that on 6 March 2024, YFS met with respondent-custodian following her release from jail. During that meeting, respondent-custodian explained Kelsey had recently demonstrated behavioral issues, and the injuries on Kelsey's body resulted from respondent-custodian's discipline a week prior. During this incident, respondent-custodian told Kelsey to retrieve a belt, and after Kelsey failed to do so, she threatened her with an extension cord. At a later meeting with YFS, respondent-custodian stated the marks on Kelsey's body only resulted from this previous incident. YFS argued this was "not consistent with the number of injuries to the child's body in various stages of healing."

On 30 March 2024, the trial court entered an order to stay "all pending civil" matters "by operation of law under" section 7B–200(c)(1) of our General Statutes. On 18 September 2024, the trial court adjudicated Kelsey as an abused and neglected juvenile. The trial court subsequently entered a written adjudicatory order on 6 December 2024.

On 12 December 2024, the trial court entered a written disposition order stating that reunification efforts with respondent-custodian were no longer required and directing respondent-custodian to be removed as a party to the action. The trial court used a pre-typed form for the disposition order, and this form contained different sections for its factual findings, conclusions of law, and decretal provisions. The form has several checkboxes with printed text for the trial court to check or blanks for the trial court to fill in. The trial court checked boxes to indicate certain statutory findings and filled in blanks.

Relevant on appeal, the trial court checked three boxes designated to factual finding 8, and stated:

> 8. The Court specifically finds that reunification efforts with <u>Luchrisha Johnson, former legal custodian</u> are not required based upon the following:[2]
>
> a court of competent jurisdiction has determined <u>Luchrisha Johnson</u> has committed or encouraged the commission of, or allowed the continuation of,any of the following upon the juvenile(s):
>
> . . .
>
> Any other act, practice, conduct that increased the enormity or added to the injurious consequence of abuse or neglect, to wit: <u>severe and egregious physical abuse of the juvenile resulting in extensive marks, bruises, and scars from the child's fingertips to her ankles; Ms. Johnson went to great lengths to conceal the abuse to the detriment of the child; Ms. Johnson is not the child's mother or father [and]</u>

---

[2] The underlined portions represent what the trial court added to the form; these statements are unique to the present case. The non-underlined portions are part of the standard form.

has no constitutional right to parent the child.

In the disposition order form's factual finding 12, "Other Findings" the trial court

stated:

> While Ms. Johnson appears to be more contrite today than in previous hearings, and she has initiated services with trauma-informed parenting classes, the fact remains that [Kelsey] was traumatized by the sever[e] and egregious physical abuse and neglect inflicted by Ms. Johnson, an individual who is not her mother or father. Ms. Johnson, as the child's former legal custodian, has no constitutional right to parent [Kelsey]. Her role as the child's former legal custodian does not overcome the cruel and grossly inappropriate punishment she inflicted on the child, and the court finds no compelling reason to require that reasonable efforts be made to reunify the child with Ms. Johnson.
>
> Non-secure legal custody of the juvenile was place[ed] with YFS on March 14, 2023, pursuant to the Non-Secure Custody Order entered on March 14, 2024, in Mecklenburg County Juvenile Court. At the time of the Initial NSC Hearing conducted on March 20, 2024, the court continued non-secure custody of the juvenile with YFS, pursuant to the Initial NSC Hearing Order entered May 3, 2024. Since that proceeding, the juvenile has at all times remained in the non-secure custody of YFS.
>
> At the time of the Disposition Hearing, Lucrisha Johnson, as the juvenile's former legal custodian, has no legal rights that may be affected by this action, and her continuation as a party is not necessary to meet the juvenile's needs.
>
> At this time, the juvenile's permanency plan will focus on reasonable efforts to reunify the child with her mother. . . .

The trial court also found respondent-custodian "has a pending felony child abuse

charge in Mecklenburg County as a result of the abuse at issue in this case." In the

form's decretal section, the trial court checked three boxes indicating YFS:

> should make reasonable efforts to eliminate the need for placement of the juvenile and make it possible for the child to safely return to his/her own home and the parent's care.
>
> . . .
>
> should make reasonable efforts to eliminate the need for placement of the juvenile by making efforts to achieve the permanency plan of <u>Reunification- primary and Adoption/Guardianship- secondary</u>.
>
> is relieved of making reasonable efforts to reunify with <u>former legal custodian, Lucrisha Johnson</u>.

Respondent-custodian filed notice of appeal from these orders on 23 December 2024.

## II.    Jurisdiction

This Court has jurisdiction to review "any initial order of disposition and the adjudication order upon which" a final order "is based." N.C.G.S. § 7B-1001(a)(3) (2023). Accordingly, we have jurisdiction to review the trial court's adjudication and dispositional orders.

## III.    Standard of Review

This Court's review of a dispositional order is limited to whether "there is competent evidence in the record to support the findings and the findings support the conclusions of law." *In re R.A.H.*, 182 N.C. App. 52, 57–58 (2007). *See In re L.N.H.*, 382 N.C. 536, 546–47 (2022) (When an appellant challenges "the sufficiency of the evidence to support the trial court's finding of aggravated circumstances under N.C.G.S. § 7B-901(c)," we "review those findings to determine if they are supported

by competent evidence."); *In re C.M.*, 183 N.C. App. 207, 213 (2007) ("This Court reviews an order that ceases reunification efforts to determine whether the trial court made appropriate findings, whether the findings are based upon credible evidence, whether the findings of fact support the trial court's conclusions, and whether the trial court abused its discretion with respect to disposition.").

"The trial court's dispositional choices—including the decision to eliminate reunification from the permanent plan—are reviewed for abuse of discretion. An abuse of discretion occurs when the trial court's ruling is so arbitrary that it could not have been the result of a reasoned decision." *In re L.N.H.*, 382 N.C. at 546 (citation omitted).

## IV. Discussion

On appeal, respondent-custodian argues "[t]he trial court abused its discretion in directing reunification efforts were not required with" her "when its findings and conclusions did not support the existence of aggravating circumstances under" N.C.G.S. § 7B-901(c)(1)(f). Respondent-custodian also argues "[t]he trial court improperly removed" her "as a party by failing to make a proper conclusion of law" because she "still maintained legal rights that would be affected by the juvenile action." We address each argument in turn.

## A. Cessation of Reasonable Reunification Efforts

Respondent-custodian first contends as a legal custodian, she was entitled to reunification efforts at the initial disposition, and that the trial court's specific finding

as to subsection 7B-901(c)(1)(f) was not supported by competent evidence.

Section 7B-901 of our General Statutes governing initial disposition hearings, allows for the cessation of reasonable reunification efforts in limited circumstances, and provides:

> (c) If the disposition order places a juvenile in the custody of a county department of social services, the court shall direct that reasonable efforts for reunification as defined in G.S. 7B-101 shall not be required if the court makes written findings of fact pertaining to any of the following, unless the court concludes that there is compelling evidence warranting continued reunification efforts:
>
> (1) A court of competent jurisdiction has determined that aggravated circumstances exist because the parent has committed or encouraged the commission of, or allowed the continuation of, any of the following upon the juvenile:
>
> a. Sexual abuse.
>
> b. Chronic physical or emotional abuse.
>
> c. Torture.
>
> d. Abandonment.
>
> e. Chronic or toxic exposure to alcohol or controlled substances that causes impairment of or addiction in the juvenile.
>
> f. Any other act, practice, or conduct that increased the enormity or added to the injurious consequences of the abuse or neglect.

N.C.G.S. § 7B-901(c)(1)(a)–(f) (2023). *Cf.* N.C.G.S. § 7B-101(18) (2023) (stating DSS is required to make "diligent" and "reasonable" efforts towards reunification).

Generally, we have "interpreted N.C.G.S. § 7B-901(c), and concluded that, in

order for a court to cease reunification efforts at the initial disposition hearing, 'the dispositional court must make a finding that [a] court of competent jurisdiction has determined that the parent allowed one of the aggravating circumstances to occur.' " *In re J.M.*, 255 N.C. App. 483, 498 (2017) (citing *In re G.T.*, 250 N.C. App. 50, 57 (2016)).

Subsection 7B-901(c)(1)(f) specifically "requires a showing of the existence of 'any *other* act, practice, or conduct,' " thus requiring "the evidence in aggravation [to] involve something *in addition* to the facts that rise to the initial adjudication of abuse and/or neglect." *In re L.N.H.*, 382 N.C. at 548 (emphasis added). "This means the trial court cannot rely on the same facts to adjudicate a juvenile as abused or neglected as the 'other act, practice, or conduct that increased the enormity or added to the injurious consequences of the abuse or neglect[ ]' for purposes of disposition." *In re N.R.R.N.*, 297 N.C. App. 673, 694 (2025) (citation omitted).

In factual finding 8—which mirrors section Subsection 7B-901(c)(1) as a fillable form with boxes that could be checked—the trial court found:

> 8. The Court specifically finds that reunification efforts with <u>Luchrisha Johnson, former legal custodian</u> are not required based upon the following:[3]
>
> a court of competent jurisdiction has determined <u>Luchrisha Johnson</u> has committed or encouraged the commission of, or allowed the continuation of, any of the following upon

---

[3] The underlined portions represent what the trial court added to the form; these statements are unique to the present case. The non-underlined portions are part of the standard form.

the juvenile(s):

. . .

> Any other act, practice, conduct that increased the enormity or added to the injurious consequence of abuse or neglect, to wit: <u>severe and egregious physical abuse of the juvenile resulting in extensive marks, bruises, and scars from the child's fingertips to her ankles; Ms. Johnson went to great lengths to conceal the abuse to the detriment of the child; Ms. Johnson is not the child's mother or father has no constitutional right to parent the child.</u>

Respondent-custodian argues, and YFS admits, " 'severe and egregious physical abuse of the juvenile resulting in extensive marks, bruises, and scars from the child's fingertips to her ankles' is the same conduct that led to the adjudication of abuse and neglect," and thus this factual finding is not supported by the statutorily required evidence of section 7B-901(c)(1)(f). We agree.

"Evidence in aggravation" requires "something in *addition* to the facts that rise to the initial adjudication of abuse and/or neglect." *In re L.N.H.,* 382 N.C. at 548 (emphasis added). Neither the record, nor the trial court's factual findings demonstrate additional evidence of "severe and egregious physical abuse of the juvenile resulting in extensive marks, bruises, and scars from the child's fingertips to her ankles" beyond the child's initial adjudication. *Cf. In re K.W.*, 272 N.C. App. 487, 492 (2020) (Generally, in disposition orders "the trial court may incorporate into its findings information obtained from written reports by the parties, as well as findings made at adjudication." (citation omitted)).

Further, the GAL maintains that our review hinges on whether there was sufficient evidence to support the remaining factual findings, that respondent-custodian "went to great lengths to conceal the abuse to the detriment of the child," and respondent-custodian "is not the child's mother or father [and] has no constitutional right to parent the child." However, the trial court also made findings about respondent's concealment of abuse and her status to support the child's adjudication.[4] Because these findings and the record do not demonstrate "something in *addition* to the facts that rise to the initial adjudication of abuse and/or neglect," this evidence does not support aggravated factors as set forth in subsection 7B-901(c)(1)(f). *See In re L.N.H.,* 382 N.C. at 548

YFS alternatively argues under our Supreme Court's analysis in *In re L.N.H.*, reunification efforts could still be terminated and "the proper response would be to remand the case back to the trial court for proper findings under N.C.G.S. § 7B-901(c)(3)(iii)." We agree.

In that case, the respondent-mother was arrested and charged with felony

---

[4] YFS and the GAL cite *In re A.W.*, 377 N.C. 238 (2021). In that case, our Supreme Court upheld a trial court's factual findings of an aggravating circumstance under 7B-901(c)(1)(f) when there was sufficient evidence in the record that "respondents continued to provide an implausible explanation for" the child's "injuries and death and worked together to conceal the truth." *In re A.W.*, 377 N.C. at 253. The Court explained the trial court's finding that the mother's "conduct increased the enormity and added to the consequences of neglect [was] supported by the evidence" where the mother failed to acknowledge that the child died as a result of abuse, worked with the father "to conceal the truth," and continued a romantic relationship with the father. *Id.* But, the present case is distinguishable where no factual findings were made to new, or continuing concealment "that increased the enormity and added to the consequences of" the child's adjudication.

child abuse inflicting serious injury following the child's removal from her custody.

After determining the evidence in the record on appeal did not support a finding

under 7B-901(c)(1)(f), our Supreme Court stated,

> we do believe that there is sufficient evidence in the record
> to support a determination by the trial court that
> reunification efforts were not required pursuant to
> N.C.G.S. § 7B-901(c)(3)(iii), which allows the cessation of
> reunification efforts in an initial dispositional order in the
> event that the parent 'has committed a felony assault
> resulting in serious bodily injury to the child[.]'

*In re L.N.H.*, 382 N.C. at 548 (emphasis omitted). Here, similar circumstances exist

where the trial court found respondent-custodian had a pending felony child abuse

charge, but "the trial court did not make the findings necessary to permit the

cessation of reunification efforts with respondent-[custodian] based upon N.C.G.S. §

7B-901(c)(3)(iii)," and "it certainly could have done so had it chosen to make such a

determination" based upon the record. *Id.* Therefore, "we vacate that portion of the

trial court's order ceasing reunification efforts with" respondent-custodian "based on

a finding the existence of aggravated circumstances and remand to the trial court

with instructions to enter appropriate findings addressing the issue of whether efforts

to reunify" respondent-custodian with the child "should be ceased pursuant to

N.C.G.S. § 7B-901(c)." *Id.*

**B. Removal as a Party**

Next, respondent-custodian contends the trial court erred by failing to make a

conclusion of law that would support her removal as a party to the present action,

and the evidence failed to establish she had no legal rights affected by the action.

At the time of the juvenile proceeding, Section 7B-401.1(g) allowed a trial court to remove a non-parent as a party from a juvenile proceeding if the court made two findings: (1) that the person did "not have legal rights that may be affected by the action" and (2) "that the person's continuation as a party" was "not necessary to meet the juvenile's needs."[5]  N.C.G.S. § 7B-401.1(g) (2023).  "Our statutes define a 'custodian' in the context of juvenile proceedings as '[t]he person or agency that has been awarded legal custody of a juvenile by a court.'  And this Court has held "a party's status as a custodian is entirely dictated by the court." *In re E.E.*, 294 N.C. App. 133, 137 (2024) (citing N.C.G.S. § 7B-101(8) (2021).

But effective for all actions filed or pending on or after 1 October 2025, section 7B-401.1(g) as recently amended by our General Assembly, removes the required finding that the person does not have legal rights that may be affected by the action, and requires the trial court to find that "the removal of the person as a party is in the child's best interests."  N.C.G.S. § 7B-401.1(g) (2025).  Thus, section 7B-401.1(g) now requires the trial court to find "the person's continuation as a parent is not necessary to meet the child's needs," and "the removal of the person as a party is in the child's best interests." *Id.*

---

[5] This "procedure for removal is essentially analogous to procedures governing misjoinder found at N.C.[G.S.] § 1A-1, Rule 21." Thomas R. Young, *North Carolina Juvenile Code: Practice and Procedure* § 2:7, n.6 (April 2025).

This Court has noted the effect of an outstanding Chapter 50 custody order in a juvenile proceeding—where the custody order awarded custodians physical and legal custody of the children—the custody order "may prevent the trial court, in its discretion, from making the first required finding under" section 7B-401.1(g*). In re J.R.S.*, 258 N.C. App. 612, 616 (2018). Similarly, our statutes contemplate this overlap. Section 7B-201(b) provides when juvenile court jurisdiction terminates, "[t]he legal status of the juvenile and the custodial rights of the parties shall revert to the status they were before the juvenile petition was filed, unless applicable law or a valid court order in another civil action provides otherwise." N.C.G.S. § 7B-201(b) (2023). Sub-section 7B-200(c)(1) specifically functions to stay "any other civil action in North Carolina in which the juvenile's custody is at issue pending action by the court in the Chapter 7B juvenile proceeding." *In re A.P.*, 371 N.C. 14, 21 n.4 (2018) (citation omitted). *See also In re S.W.* 914 S.E.2d 457, 462 (2025) ("[C]hild custody actions are automatically stayed when there is a pending Chapter 7B juvenile case."). *Cf. In re A.P.*, 371 N.C. at 21 n.4 (describing "any properly entered order in the juvenile proceeding controls over a conflicting order *entered* in another civil custody action" (emphasis added) (citing N.C.G.S. § 7B-200(c)(2) (2017))).

In the present case, the trial court stated in its "Other Findings" section: "At the time of the Disposition Hearing, Lucrisha Johnson, as the juvenile's former legal custodian, has no legal rights that may be affected by this action, and her continuation as a party is not necessary to meet the juvenile's needs." Because we

have held "any determination requiring the exercise of judgment, or the application of legal principles is a conclusion of law," we treat this factual finding as a conclusion of law. *In re E.E.*, 294 N.C. App. 133, 136 (2024) (citation omitted).

Our review of the record demonstrates that a civil custody order granting legal custody to respondent-custodian was stayed per section 7B-200(c)(1). However, we cannot reach a holding as to whether the trial court erred in concluding respondent-custodian had "no legal rights that may be affected by this action," in light of the recent amendments to section 7B-401.1(g). Accordingly, we vacate and remand that part of the trial court's order which removes respondent-custodian as a party and instruct the trial court to consider the impact of this statutory amendment.

## V. Conclusion

After careful review, we vacate that portion of the trial court's order which ceases reunification efforts between respondent-custodian and the child under N.C.G.S. 7B-901(c)(1)(f), and remand for the trial court to make appropriate findings of fact and conclusions of law pursuant to subsection 7B-901(c)(3)(iii). Further, we vacate that portion of the trial court's order which removes respondent-custodian as a party, and remand for the trial court to consider the impact of the statutory amendment to subsection 7B-401.1(g) and make appropriate findings of fact and conclusions of law as necessary.

VACATED AND REMANDED.

Judges GORE and FLOOD concur.

Report per Rule 30(e).