An unpublished opinion of the North Carolina Court of Appeals does not constitute controlling legal authority. Citation is disfavored but may be permitted in accordance with the provisions of Rule 30(e)(3) of the North Carolina Rules of Appellate Procedure.

IN THE COURT OF APPEALS OF NORTH CAROLINA

No. COA25-1010

Filed 17 June 2026

Person County, No. 24JT001056-720

IN THE MATTER OF: C.C.N.

Appeal by respondent-mother from order entered 23 July 2025 by Judge Adam S. Keith in Person County District Court. Heard in the Court of Appeals 3 June 2026.

> *Hooks Law, P.C., by Laura G. Hooks, for appellant-respondent-mother.*
>
> *No brief filed for petitioner-appellee Person County Department of Social Services.*
>
> *Michelle F. Lynch for the Guardian Ad Litem.*

ARROWOOD, Judge.

Respondent-mother ("Mother") appeals from order terminating her parental rights to her son, Colton. [1] For the following reasons, we affirm the trial court's order.

I.     Background

---

[1] A pseudonym is used to protect the identity of the minor child.

Colton was born in 2018. Mother also has two older children, a daughter and a son.[2] On 21 August 2023, Person County Department of Social Services ("DSS") received a report concerning neglect that alleged that Mother had a history of substance abuse and was unable to care for Colton. Mother's two older children reported riding around in the car with Mother and her boyfriend, Mr. J, going from place to place to get Subutex. The older children were also concerned about Colton's safety because Mother reportedly slept most of the morning and was difficult to wake up. Additionally, all three children were exposed to a domestic violence incident between Mother and Mr. J. Mr. J took Mother's phone and yelled at her in the presence of the children. Mother's older son also reported that Mr. J slammed him to the floor and choked him. Mother was unable to protect the children.

Initially, Mother denied any substance use. DSS requested that Mother complete a drug screen and she agreed, however she did not arrive at the drug screen and avoided all communication with DSS that week. Mother later admitted that she had recently used crystal meth and Valium, and had a prescription for Subutex. Due to concerns about Mother's substance use, DSS requested that she identify a Temporary Safety Provider for Colton. Colton was temporarily placed with his maternal grandmother, but she was unable to continue caring for him because she

---

[2] Mother's parental rights to her two oldest children are not a subject of this action.

already had guardianship of Mother's two older children. DSS was granted nonsecure custody of Colton on 3 October 2023.

On 4 October 2023, DSS filed a juvenile petition alleging that Colton had been neglected. The trial court held a hearing on the petition on 2 November 2023. Mother did not dispute any of the allegations in the petition, which included the aforementioned details of the 21 August 2023 DSS report and the DSS investigation that followed. The trial court adjudicated Colton neglected in an order entered 1 December 2023. DSS continued to have custody over Colton, and Mother was granted weekly visitation. The trial court entered a permanent plan of reunification and ordered that Mother work with DSS to establish and follow through on a case plan.

The trial court held its first permanency planning review hearing on 25 January 2024. At that time, Mother had not completed a case plan and had missed four drug screens and six visits with Colton. The court found that DSS had made reasonable efforts to work with mother and make it possible for Colton to return home, but that Mother had not been cooperating. Consequently, the court changed the permanent plan to adoption with a concurrent plan of reunification.

Mother met with DSS to create a case plan on 2 July 2024. The trial court then held another permanency planning review hearing on 11 July 2024. Following the hearing, the trial court found that Mother had gained employment and entered treatment at Freedom House but overall had not made adequate progress within a

reasonable time under her case plan.  The trial court retained the permanent plan of adoption with a concurrent plan of reunification.

On 29 August 2024, DSS filed a Petition for Termination of Parental Rights. The trial court held another review hearing on 14 November 2024.  DSS reported that Mother was still employed, had completed a substance abuse program, and moved into her own apartment.  Additionally, the DSS report alleged that Mother was a no-show for drug screens from October 2023 to May 2024 but had two negative drug screens in July 2024.  The trial court found that Mother was not attending visits on time or otherwise actively participating with DSS and her case plan.  The trial court made no changes to the permanent plan.

The termination hearing was held on 29 May 2025.  The trial court received testimony from a social worker and admitted several exhibits, including the results of Mother's drug screens and DSS reports summarizing Mother's parenting skills, visitation, substance use, and emotional and mental health.  On 23 July 2025, the trial court entered an order terminating Mother's parental rights on the grounds of neglect and willfully leaving her child in foster care.  In its order, the court detailed the circumstances that originally led to Colton being placed in DSS custody and described Mother's cooperation with DSS since.  The court found Mother did not have stable housing or employment, had not had consistent contact with the agency, and failed to attend multiple scheduled progress meetings.

Mother filed notice of appeal to this Court on 14 August 2025.

## II.    Discussion

Mother challenges several of the trial court's findings of fact and argues that the trial court erred in concluding that there were grounds to terminate her parental rights based on neglect and willfully leaving Colton in foster care.  For the following reasons, we hold that the trial court did not err in finding that there were sufficient grounds to terminate Mother's parental rights based on neglect.  Accordingly, we affirm the trial court's order.

### A.    Standard of Review

"We review a trial court's adjudication under N.C.G.S. § 7B-1111 'to determine whether the findings are supported by clear, cogent and convincing evidence and the findings support the conclusions of law.' " *In re E.H.P.*, 372 N.C. 388, 392 (2019) (quoting *In re Montgomery*, 311 N.C. 101, 111 (1984)).  Where a trial court finds multiple grounds for termination, and this Court agrees that at least one ground supports this conclusion, "it is unnecessary to address the remaining grounds." *In re P.L.P.*, 173 N.C. App. 1, 8 (2005) (citation and quotation marks omitted).

When a finding of fact is supported by clear, cogent, and convincing evidence, it is "conclusive even if the record contains evidence that would support a contrary finding." *In re B.O.A.*, 372 N.C. 372, 379 (2019) (citation omitted).  Additionally, unchallenged findings of fact made by the trial court are binding on appeal. *In re Z.V.A.*, 373 N.C. 207, 211 (2019).  We review "only those findings needed to sustain the trial court's adjudication." *In re J.S.*, 374 N.C. 811, 814 (2020) (citation omitted).

- 5 -

The trial court's legal conclusions are reviewed de novo. *In re I.M.S.*, 298 N.C. App. 689, 694 (2025). Where a finding of fact is essentially a conclusion of law, it will be treated as such on appeal. *In re Adoption of C.H.M.*, 371 N.C. 22, 28 (2018). "In distinguishing between findings of fact and conclusions of law, '[a]s a general rule, . . . any determination requiring the exercise of judgment or the application of legal principles is more properly classified a conclusion of law.' " *Id.* (quoting *State v. Sparks*, 362 N.C. 181, 185 (2008) (alterations in original)).

## B. Neglect

"A trial court may terminate parental rights if it concludes the parent has neglected the juvenile within the meaning of N.C.G.S. § 7B-101." *In re M.S.E.*, 378 N.C. 40, 47 (2021) (citing N.C.G.S. § 7B-1111(a)(1)). A neglected juvenile is defined, in relevant part, as a juvenile whose parent "[d]oes not provide proper care, supervision, or discipline" or "[c]reates or allows to be created a living environment that is injurious to the juvenile's welfare." N.C.G.S. § 7B-101(15). Termination of parental rights may be "based on neglect that is currently occurring at the time of the termination hearing" or, if the child has not been in the custody of the parent for a significant time prior to the termination hearing, "a likelihood of future neglect by the parent." *In re B.R.L.*, 379 N.C. 15, 21 (2021) (citations omitted).

To determine whether future neglect is likely, " 'evidence of neglect by a parent prior to losing custody of a child—including an adjudication of such neglect—is admissible in subsequent proceedings to terminate parental rights[.]' " *In re M.S.E.*,

378 N.C. at 48 (quoting *In re Ballard*, 311 N.C. 708, 715 (1984)). However, the trial court must also "consider evidence of changed circumstances occurring between the period of past neglect and the time of the termination hearing." *In re Z.G.J.*, 378 N.C. 500, 509 (2021) (quoting *In re R.L.D.*, 375 N.C. 838, 841 (2020)). "It is well established that . . . '[t]he determinative factors must be the best interests of the child and the fitness of the parent to care for the child *at the time of the termination proceeding.*'" *Id.* (quoting *In re Ballard*, 311 N.C. at 715) (emphasis in original). "A parent's failure to make progress in completing a case plan is indicative of a likelihood of future neglect." *In re M.J.S.M.*, 257 N.C. App. 633, 637 (2018) (citation omitted). A likelihood of future neglect may also be demonstrated by a failure to address the conditions that led to the child's placement in DSS custody. *See In re M.A.*, 378 N.C. 462, 476–77 (2021).

### 1.    Challenges to Findings of Fact

Mother challenges several of the trial court's findings of fact. We review her challenges to the following findings which are needed to sustain the trial court's adjudication:

> 39. [Mother] does not have stable housing or employment;
> . . . .
> 74. There is a probability that the parents' neglect will continue for the foreseeable future pursuant to the statute because the mother has not addressed the issues that brought [Colton] into care[.]

Each of these findings of fact are supported by clear, cogent and convincing

evidence and thus are conclusive. While Mother had her own apartment, Ms. Puryear, the social worker assigned to the family, testified that the home would not have been appropriate, in terms of size, for rooming Colton. Mother rented a two-bedroom apartment, but she already had her two older children living with her and planned on having her daughter sleep in the same room as her. A DSS report stated that Mother's apartment did not have enough bedrooms, because the daughter would not be allowed to sleep with Mother.

As for employment, past DSS reports and permanency planning review orders suggest that Mother worked at Food Lion from at least July to November 2024. However, a DSS report prepared for the termination hearing stated that in February 2025, Mother reported that she was working at Wal-Mart but was let go in December 2024. Mother points to no other evidence in the record demonstrating that she had stable employment at the time of the termination hearing. Accordingly, Finding 39 is supported by sufficient evidence in the record.

Mother argues that there is insufficient evidence supporting Finding 74 because she "engaged in some services, achieved sobriety at times, visited with Colton, completed a parenting class, and secured employment and housing." The first part of Finding 74 in which the trial court states that "[t]here is a probability that the parents' neglect will continue" is more properly classified as a conclusion of law because it requires the exercise of judgment. However, the last portion finding that "[M]other has not addressed the issues that brought [Colton] into care" is properly

categorized as a finding of fact, and there is sufficient evidence supporting the finding.

While Mother did complete portions of her case plan, she failed to complete others and evidence in the record suggests she had not fully addressed her substance abuse issues. For example, DSS reported that while Mother obtained a clinical assessment in accordance with her case plan, she did not follow through on its recommendation that she engage in mental health or group therapy. Additionally, Mother's case plan included regular visitation and phone calls with Colton, but Mother consistently arrived late or did not show up or call at all. Most notably, though Mother engaged in some treatment for substance use, she tested positive for methamphetamines in April 2025, the month prior to the termination hearing. Her substance use was an important factor in DSS taking custody of Colton, and the evidence of recent methamphetamine use supports the trial court's finding that Mother had not addressed the issue.

## 2. Challenge to Conclusion of Law

Mother next argues that the trial court's order contains insufficient findings of fact to support the trial court's conclusion that there was a likelihood that Mother's neglect would continue in the future. She points to her progress on her case plan, completion of a parenting class, and attainment of employment and housing as undermining the court's conclusion. We hold that the trial court's conclusion is adequately supported by its findings of fact.

We have already determined that the trial court's finding that Mother lacked stable housing and employment is conclusive. Additionally, its finding that Mother had not addressed the issues that brought Colton into DSS care is conclusive, despite Mother's completion of a parenting class and progress in other areas of her case plan. The following unchallenged findings of fact also support the trial court's conclusion:

> 40. [Mother] has not had consistent contact with the agency;
>
> 41. There have been multiple scheduled progress meetings which [Mother] did not attend;
>
> 42. There were Child and Family Team meetings scheduled with [Mother] on 10/17/2023, 11/1/2023, and 11/27/2023; She was either multiple hours late or did not show up at all;
>
> 43. Social Worker Delaine Phelps planned a home visit with [Mother] on 1/19/2024, but when social worker Phelps arrived, she was told that [Mother] was not there;
>
> 44. [Mother] requested other meetings with the social worker and those were scheduled on 2/16/24 and 3/8/24 and [Mother] did not attend either;
>
> 45. [Mother] completed a case plan with the agency on July 2, 2024;
>
> 46. [Mother] was scheduled for weekly visits until January 25, 2024; The plan was changed to adoption at that time and visitation was changed to once a month;
>
> 47. [Mother] has missed several scheduled visits on 10/19/2023, 11/2/2023, 11/16/2023, 12/14/2023, 12/28/2023, and 1/11/2024; The missed visits are due to no show or arriving late;

. . . .

> 51. [Mother] is also allowed phone calls with [Colton] on Sundays and Tuesdays; however, the phone calls are not consistent[.]

The trial court's findings establish that Mother's progress on her case plan was inconsistent and, at the time of the termination hearing, Mother had not addressed her substance use or secured stable employment and housing. These findings demonstrate a likelihood of future neglect and support the trial court's conclusion that there were grounds to terminate Mother's parental rights pursuant to N.C.G.S. § 7B-1111(a)(1). Accordingly, the trial court did not err in terminating Mother's parental rights. Since only one ground is needed in order to terminate parental rights, we do not consider whether the trial court erred in concluding that there were also grounds to terminate parental rights pursuant to N.C.G.S. § 7B-1111(a)(2).

### III. Conclusion

For the foregoing reasons, we affirm the trial court's order terminating Mother's parental rights.

AFFIRMED.

Judges STROUD and COLLINS concur.

Report per Rule 30(e).